# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00760-CR

**Alfredo Soto Enriquez, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL DISTRICT NO. 07-1580-K277, HONORABLE KEN ANDERSON, JUDGE PRESIDING

## MEMORANDUM OPINION

On June 25, 2008, a grand jury returned an indictment charging appellant Alfredo Soto Enriquez with the felony offenses of continuous sexual abuse of a young child (count 1), aggravated sexual assault of a child (counts 2-9), and indecency with a child by contact (counts 10-11). Tex. Penal Code Ann. §§ 21.02, 22.021 (West Supp. 2008), § 21.11 (West 2003). On October 10, 2008, a jury found Enriquez guilty of all eleven counts charged in the indictment. The jury assessed punishment at 50 years for each of counts one through nine and 20 years for each of counts ten and eleven, and the trial judge entered multiple stacking orders. In three points of error, Enriquez argues that the trial court erred by (1) excluding from opening statements evidence of a prior accusation of physical assault made against him by his daughter, D.E., the child complainant in this case, (2) excluding that same evidence from cross-examination of D.E., and (3) excluding evidence during the cross-examination of L.E., Enriquez's wife and D.E.'s mother, regarding the cost of her breast implants. We affirm the judgment of the trial court.

## BACKGROUND

Complainant, D.E., lived with her parents and younger brother in Williamson County, Texas at the time of the events described herein. According to D.E.'s testimony at trial, her father, appellant Alfredo Enriquez, sexually abused her on a frequent basis when she was in the sixth and seventh grades. D.E. testified that Enriquez forced her to have vaginal, anal, and oral sex with him in several areas of the family's home, including the master bedroom, the living room, the study, a stairwell, and her bedroom. D.E. testified that when her father would abuse her on the floors of the master bedroom or living room or on the couch in the living room, he would sometimes place gold-colored towels underneath her so that the carpets and couch would not be stained. He would not place down towels when abusing her in the study, where he would penetrate her or force her to perform oral sex on him in a desk chair facing the family computer. D.E. testified that Enriquez also penetrated her using sex toys and forced her to penetrate her anus with a spindle used for holding compact discs. Enriquez sometimes used condoms and sexual lubricant when abusing D.E. In addition, he would often force her to watch pornography on the family's television or home computer or on his cell phone.

According to testimony at trial, the last instance of abuse occurred on October 20, 2007, when D.E. was twelve years old. On the evening of October 21, 2007, D.E. told her mother, L.E., that Enriquez had been abusing her. L.E., after assuring D.E. that the abuse would never occur again, asked her to calm down so as not to attract the attention of Enriquez. As soon as Enriquez left for work the next morning, L.E. immediately sought assistance, eventually coming in contact with the Williamson County Sheriff's Department. As part of the department's investigation of the case, D.E. took them through the family house. D.E. showed police the specific locations of

2

the condoms, lubricant, CD spindle, and sex toys that her father had used when abusing her, as well as the location of adult pornographic DVDs and magazines. D.E. also pointed out areas in the house where she had been abused, and police took carpet samples of some of those areas, including the master bedroom and the study. In addition, police recovered gold-colored towels matching D.E.'s description of the towels her father would place under her. The carpet samples and gold towels taken by police showed evidence of Enriquez's semen, while the spindle had D.E.'s DNA on it.

As part of the investigation, police also set up controlled calls from D.E. and her mother to Enriquez.[1] During the first call from D.E. to Enriquez, D.E. said, "I was listening to this radio station last night about like kids who have problems and are getting abused, and I just don't feel right anymore. I think I'm gonna tell mom." Enriquez responded, "Wait 'til I get there." Later in the conversation, Enriquez said, "OK, please hold on we'll talk, and it's not gonna be that bad anymore anyway." During the second conversation between D.E. and Enriquez, which appears to have occurred shortly after the first, D.E. explicitly referenced Enriquez forcing her to perform oral sex on him: "On my radio I heard that when you stick your dick in my mouth that it's oral sex and that's the same thing you can go to jail even more and it's just, I can't lie, dad . . . I have to tell mom." Enriquez responded, "OK, let me talk to your mom. Alright?" Later in the conversation, Enriquez asked D.E. to "be strong and calm down," saying, "'Cause this is something that if . . . the way I understand it—it's something that I'll go to jail . . . for a long time."

---

[1] The participants in the calls spoke mainly in Spanish. The quotes from the calls are taken from the English translation made by a licensed court translator.

Before trial, the trial court granted the State's motion in limine regarding a previous allegation of physical abuse made by D.E. against Enriquez.[2] At trial, defense counsel asked the trial court's permission to discuss the prior allegation during opening statement. The trial court denied this request. During cross-examination of D.E., defense counsel approached and again asked to discuss the prior allegation. The trial court sustained the State's objection to admission of the prior allegation under Texas Rule of Evidence 608(b), which bars the use of prior unconvicted acts to impeach a witness's credibility.

Later in the trial, during the cross-examination of L.E., defense counsel asked her, "How much did your breast implants cost?" The State objected to the relevance of the question. Defense counsel argued that the question would elicit relevant information about L.E.'s "spending patterns," as the State had questioned her about the family's poor financial situation during direct examination. The trial court sustained the State's objection.

At the conclusion of the trial, the jury found Enriquez guilty of all eleven counts brought against him, and this appeal followed.

**DISCUSSION**

*Opening Statement*

In his first point of error, Enriquez argues that the trial court erred in excluding D.E.'s prior allegation of physical abuse during the defense's opening statement. Under the code

---

[2] The record contains few details of this prior allegation. The record shows only that the allegation was one of physical abuse, and that, according to defense counsel, Enriquez was "cleared" and the charges "ruled out."

4

of criminal procedure, defense counsel may address the "nature of the defenses relied upon and the facts expected to be proved in their support" during opening statement. Tex. Code Crim. Proc. Ann. art. 36.01(a) (West 2007). Texas courts have long held that "there rests in the court the judicial discretion to control the [opening] statement and limit it to its proper scope." *Dugan v. State*, 199 S.W. 616, 617 (Tex. Crim. App. 1917); *see also Norton v. State*, 564 S.W.2d 714, 718 (Tex. Crim. App. [Panel Op.] 1978) ("The character and extent of opening statement are subject to the trial court's discretion."). A trial court abuses its discretion if its ruling falls outside the "zone of reasonable disagreement." *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990); *see also Donnell v. State*, 191 S.W.3d 864, 867 (Tex. App.—Waco 2006, no pet.) (applying abuse of discretion standard to rulings on opening statement).

In this case, prior to opening statement, the trial court heard arguments on the State's motion in limine concerning the prior accusation, and granted the State's motion over the argument of defense counsel. While a ruling on a motion in limine is not a ruling on admissibility, *see Draughon v. State*, 831 S.W.2d 331, 333 n.1 (Tex. Crim. App. 1992) (explaining that motion in limine does not entail adverse ruling on admissibility of evidence), the discussion of the motion indicated that the admissibility of the evidence was in question. Consequently, defense counsel had no right to raise the issue during opening, as he could not reasonably have "expected" to prove that fact during trial.[3] *See Carrasquillo v. State*, 742 S.W.2d 104, 113 (Tex. App.—Fort Worth 1987,

---

[3] Enriquez also argues in this point of error that the trial court erred in not admitting the evidence when the issue came up during cross-examination of D.E. We will address the issue of admissibility of the evidence in point of error two, which concerns the trial court's exclusion of the evidence during cross-examination.

no pet.) (finding no error when trial judge instructed defense counsel prior to opening statement not to "mention to the jury anything that at this point, you think *might* not be admissible") (emphasis added); *see also Moore v. State*, 868 S.W.2d 787, 793 (Tex. Crim. App. 1993) ("While the accused also has the right to make an opening statement at the point and on matters prescribed by the statute, it is not error for the trial court to preclude him from stating matter inadmissible in evidence and from making argumentative and prejudicial remarks in his favor."). Given the court's broad authority over opening statements and the questionable admissibility of the evidence, we cannot say that the trial court abused its discretion in disallowing mention of the prior allegation during opening statement. Accordingly, we overrule Enriquez's first point of error.

*Cross-Examination of D.E.*

In his second point of error, Enriquez argues that the trial judge erred in excluding evidence of the prior accusation of physical abuse during the cross-examination of D.E. Enriquez maintains that the exclusion of the evidence violated his constitutional right to confrontation and effective assistance of counsel under the Sixth Amendment and his constitutional right to present a defense under the Due Process Clause of the Fourteenth Amendment. We employ a bifurcated review when dealing with constitutional rulings: "Although we defer to a trial court's determination of historical facts and credibility, we review a constitutional legal ruling . . . de novo." *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006).

First, Enriquez argues that the trial court's exclusion of the prior allegation violated his Confrontation Clause rights. The Sixth Amendment guarantees the right of the accused to be confronted with the witnesses against him. *See* U.S. Const. Amend. VI; *Davis v. Alaska*, 415 U.S. 308, 315 (1974). According to the court of criminal appeals, a "primary interest secured by the

6

Confrontation Clause is the right of cross-examination." *Lopez v. State*, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000). When evidentiary rules conflict with the defendant's right of cross-examination, "the Confrontation Clause will prevail." *Id.*

While some states have created a special exception for prior false accusations of abuse in cases involving sexual offenses, Texas has not done so. *See id.* at 223-24. Instead, the court of criminal appeals counsels courts to approach such issues on a case-by-case basis using a two-pronged test: the defendant must present proof that the accusations were false, *and* the prior and current accusations must be of a similar nature. *Id.* at 226.

Enriquez fails to meet the requirements of the first prong, that of presenting proof that the prior accusation was false. While defense counsel argued to the trial court that the allegations of physical abuse "resulted in an investigation in which Mr. Enriquez was subsequently cleared," the record does not provide any specific information about the ultimate resolution of the investigation. The fact that charges were dropped or the investigation suspended does not amount to a showing that the allegations were false for the purposes of the *Lopez* test. *See id.* at 226 (holding that fact that case involving prior accusation was "closed" was not probative of falsehood of allegation, as "[t]his could simply indicate a lack of evidence to prove the allegation at that time, or an administrative decision that, despite the allegation's validity, the parties would be best served by closing the case"); *see also Garcia v. State*, 228 S.W.3d 703, 706 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (holding that "the fact that no charges were filed after a police investigation" did not prove falsity of allegations under *Lopez*).

Even if Enriquez had presented proof of falsity, he nevertheless fails to satisfy the second prong, that of demonstrating the similarity of the previous allegation to the current allegation.

7

*See Lopez*, 18 S.W.3d at 226. Enriquez presents almost no evidence linking the two allegations. The record shows only that the prior and current allegations were made by D.E. against Enriquez, and that the first allegation concerned physical abuse, while the second allegation concerned sexual abuse. Unrelated allegations of physical and sexual abuse do not constitute a pattern of behavior sufficient to satisfy the second prong of the *Lopez* test. *Id.* (holding that complainant's prior accusation of physical abuse by mother and current allegation of sexual abuse by defendant did not have requisite similarity). Accordingly, as Enriquez failed to provide adequate proof that the prior allegations were false or of a similar nature, his Confrontation Clause challenge fails.

Second, Enriquez argues that the trial court's exclusion of the prior allegation denied him his Sixth Amendment right to effective assistance of counsel. *See* U.S. Const. Amend. VI. To prevail on an ineffective assistance of counsel claim, the defendant must first show that counsel's performance was deficient. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Enriquez, however, provides no proof that counsel's performance was deficient, instead basing his argument on the actions of the trial court in excluding evidence of the prior allegation. As such considerations have no bearing on the issue of ineffective assistance of counsel, and as Enriquez offers no proof of deficient performance by defense counsel, Enriquez's claim of ineffective assistance of counsel fails under *Strickland*.

Third, Enriquez argues that the trial court's exclusion of the prior allegation denied him due process by preventing him from presenting a defense.[4] While the constitution guarantees criminal defendants the right to present a defense, "state and federal rulemakers have broad latitude

---

[4] The right to present a defense may be rooted in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment. *See United States v. Scheffer*, 523 U.S. 303, 329 n.16 (1998) (Stevens, J., dissenting).

8

under the Constitution to establish rules excluding evidence from criminal trials." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). The Supreme Court has held that such rules "do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve,'" and that such rules rise to a constitutionally impermissible level only when they infringe "upon a weighty interest of the accused." *Id.* (quoting *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)).

In interpreting the right to present a defense, the court of criminal appeals has identified "two distinct scenarios" under which the right might be abridged. *See Wiley v. State*, 74 S.W.3d 399, 405 (Tex. Crim. App. 2002). The first scenario concerns "a state evidentiary rule which categorically and arbitrarily prohibits the defendant from offering otherwise relevant, reliable evidence which is vital to his defense." *Id.* The second scenario arises when "a trial court's clearly erroneous ruling exclud[es] otherwise relevant, reliable evidence which 'forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense.'" *Id.* (quoting *Potier v. State*, 68 S.W.3d 657, 665 (Tex. Crim. App. 2002)). Under this standard, "erroneous evidentiary rulings rarely rise to the level of denying the fundamental constitutional rights to present a meaningful defense." *Potier*, 68 S.W.3d at 663.

Enriquez argues that the court's erroneous exclusion of evidence of the prior accusation prevented him from presenting his defense, as the main theory of his defense involved dishonesty on the part of the complainant, D.E.[5] Even assuming without deciding that the trial court erred, the exclusion of evidence in this case does not rise to the level of constitutional error. Enriquez was not precluded from presenting the defense as a general matter. For example, he was

---

[5] Enriquez does not challenge Texas Rule of Evidence 608(b), which disallows the use of prior unconvicted acts to impeach the credibility of a witness, as arbitrary.

able to present witness testimony challenging D.E.'s credibility.[6]  Further, the prior allegation is of dubious probative value.  In the absence of evidence of the falsity of D.E.'s previous allegation, the mere fact that it did not lead to adverse consequences for Enriquez does not indicate that D.E. was necessarily dishonest in making the allegation.

Enriquez also argues that the exclusion of evidence prevented him from explaining the statements he made to his daughter during the controlled calls.  The inability to bring up the prior allegation at trial, Enriquez maintains, prevented him from adequately responding to the State's questions regarding his failure to challenge D.E.'s direct statements detailing Enriquez's abusive acts, including, "You put your dick in my mouth."  He asserts on appeal that his "wariness" of the topic of conversation, brought about by D.E.'s prior allegation, explains his responses to D.E.'s statements.  There is no reason to expect, however, that the experience of a prior allegation would make a person less likely to defend himself against a new allegation.  It is difficult, then, to see how evidence of D.E.'s prior allegation would be relevant to explain Enriquez's statements during the controlled call.

Further, Enriquez was able to offer other explanations to the jury.  When questioned during cross-examination about what he meant when he said that "it wouldn't happen anymore," Enriquez explained that he thought D.E. was talking about being teased by her classmates at school.  Enriquez was also able to make a passing reference to the prior allegation.  When asked if he knew

---

[6] In particular, Enriquez was able to offer the testimony of D.E.'s grandmother, who testified that both D.E. and L.E. have untruthful characters.  Defense counsel also had the opportunity to directly cross-examine D.E. about any potential inconsistencies in her allegation and testimony.  In addition, defense counsel was able to cross-examine the numerous State witnesses who participated in the investigation and spoke with D.E. or observed her behavior, including detectives, crime-scene investigators, and medical professionals.

whether D.E.'s allegations carried serious consequences, he responded, "Yes, because she's made those claims before on physical abuse." The jury received no limiting instruction regarding that statement, and we can only assume that they considered that fact, along with all of the other facts in this case, when making the decision to convict Enriquez. The record shows that Enriquez was able to present his defense, and consequently Enriquez's argument fails to meet the constitutional standard.

As we conclude that the trial court's ruling did not deny Enriquez his constitutional rights to confront witnesses against him, receive the effective assistance of counsel, or present a defense, Enriquez's second point of error is overruled.

*Cross-Examination of L.E.*

In his third point of error, Enriquez claims that the trial court erred in excluding evidence of the "spending patterns" of L.E., his wife and the mother of the complainant. Under the Texas Rules of Evidence, evidence "must satisfy two requirements to be considered relevant: first, materiality, and second, probativeness." *Miller v. State*, 36 S.W.3d 503, 507 (Tex. Crim. App. 2001); *see also* Tex. R. Evid. 401-02. To be material, evidence must address "any fact that is of consequence to the determination of the action. If the evidence is offered to help prove a proposition which is not a matter in issue, the evidence is immaterial." *Miller*, 36 S.W.2d at 507 (internal citations and quotation marks omitted). Trial court rulings on relevance are reviewed for abuse of discretion: "Questions of relevance should be left largely to the trial court, relying on its own observations and experience, and will not be reversed absent an abuse of discretion." *Brown v. State*,

96 S.W.3d 508, 512 (Tex. App.—Austin 2002, no pet.) (quoting *Moreno v. State*, 858 S.W.2d 453, 463 (Tex. Crim. App. 1993)) (internal quotation marks omitted).

At trial, defense counsel, after confirming that L.E. had told a detective that she started working at a strip club due to debts that her husband had incurred, asked, "How much did your breast implants cost?"  The State objected on relevance grounds, and the trial judge sustained the objection, reminding defense counsel, "This is a child molesting case.  Okay.  This is a child molesting case."

Enriquez argues that this testimony rebuts the State's portrayal of him as a "reckless spender."  Even in light of this assertion, the amount of L.E.'s expenditures for breast implants is not material, as such information does not address any "matter in issue" in this, a sexual assault case. The trial court acted well within its discretion in ruling that such evidence was not relevant. Consequently, Enriquez's third point of error is overruled.

## CONCLUSION

Because we find no reversible error, we affirm the judgment of the trial court.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Waldrop and Henson

Affirmed

Filed:   October 23, 2009

Do Not Publish